Good afternoon, Council. We will be hearing today the case of Bethany La Spina v. SEIU-PA State Council, at all, number 19-3484. And we will begin with Council for Ms. La Spina. Thank you, Your Honors. May it please the Court. I'm Jonathan Mitchell on behalf of Plaintiff Appellant Bethany La Spina, and we'd like to reserve five minutes for rebuttal. Granted. Plaintiff Bethany La Spina has sued for a refund of compulsory union payments that she was forced to remit prior to the Supreme Court's decision in Janus. She's also sued for a refund of union dues that were diverted from her wages after she resigned the union membership in the wake of the Supreme Court's decision. The District Court dismissed her claims for lack of an Article III case or controversy, but it should not have done so. Ms. La Spina has indisputably suffered Article III injury from the past compulsory union payments that she was forced to make prior to Janus, and the union caused those injuries by negotiating and enforcing an agency shop arrangement. Counsel, I think it would be helpful. There are obviously different counts and classes as well as the individual count. But there are also, if I understand correctly from your briefing, there seem to be three different sort of subgroups, even within count one. And I wonder if we could address those separately, if it is a fair way to characterize them, because it seems to me there would be different issues regarding standing that perhaps you could assist us with on each of those. Yes, that's correct. Ms. La Spina is suing for a refund on a class-wide basis. So her claim, even though the court hasn't reached the class certification issues, she's suing as a class representative on behalf of everyone who was forced to make compulsory payments to the union prior to Janus. But there are different types of compulsory payments that were made. For example, some people, unlike Ms. La Spina, never joined the union at all. And they were forced to pay agency fees to the union, which is similar to union dues, except they're not members. Others, like Ms. La Spina, joined the union either reluctantly because they figured, I have to pay the union regardless, I might as well join. Or in Ms. La Spina's case, she was misled by her employer into believing that union membership was mandatory. So there are different types of class members, but they've all suffered the same Article III injury in that they were forced to pay money to the union against their will. And in our view, we don't think that affects the Article III standing injury. That seems to be looking at the injury, though, at a very abstract sort of level. Why isn't it more accurate to think about her proposed class representation as sort of three subclasses, even within count one? That is, the employees who refused to join the union and paid their fair share, the employees who joined because they weren't informed that they could decline, and those employees who joined reluctantly, as you've asserted, because of the small difference between the membership dues and the fair share fees. It's quite possible that certifying subclasses may be the appropriate response. But with respect, Your Honor, we believe that's an issue that should be resolved if and when this case reaches the class certification stage. The district court threw us out for lack of Article III standing and didn't even reach the merits. And our contention on appeal today is simply that this case was entitled to proceed further. It should not have been thrown out for lack of an Article III case or controversy. The district court should have at least reached the merits of Ms. Loosland's claim and ruled one way or the other. If those are the sort of three components to the proposed class under count one, as you yourself were describing it, for two of them, the employees who refused to join the union and paid fair share fees instead, and the employees who joined reluctantly because of the difference between membership dues and fair share fees, being aware of that difference. How is she similarly situated to those in the class? How is she even a member of those two groups? We believe she's similarly situated in the following respect. All of these employees were forced to pay money to the union. There were different mechanisms by which those forced payments were collected. Some of them were collected through the fact that agency fees were imposed on non-members. Others, like Ms. Lasvina, was forced to pay at least the compulsory portion of her union dues. So Ms. Lasvina, although she joined the union, she still was forced to pay the portion of the union dues that she would have had to pay even if she had stayed out. So she's similarly situated, even though there are different reasons and different ways by which the forced payments were collected, but all the payments were forced. So that's why we believe she is an appropriate class representative, not only for the people in her specific situation, but for others who were in slightly different situations but nevertheless were forced to pay money to the union. How was she forced? How was she forced to join the union? She was not forced to join the union. You've been telling us that she was forced. There's a class of folks that were forced to join the union. I'm sorry, Judge Westrapa. She was not forced to join the union. She was forced to pay money to the union, not forced to join. So she had two choices. Choice one is don't join the union, but pay agency fees. Choice two is join the union and pay full membership dues. Whatever choice she made, she would have been forced to pay at least the amount of money that she would have had to pay in agency fees had she stayed out. The only free choice she had is to join the union and then pay the additional difference between full membership dues and the compulsory agency fee that she would have had to pay regardless. So that's our claim of how she was forced to pay money. So, Mr. Mitchell, let's assume we need to set aside the class certification until after we get to standing. Let's say she has an injury in fact because she paid money out of pocket. Let's say that's redressable. I'd like to focus in on causation here. Now, the way the district court conceptualized this, the cause of her injury was the HR officer's miscommunication. I take it you are resisting that framing. Now, your articulation is that the union, whatever it was, made her. And the heading of count one in your complaint is unconstitutional agency shop. But you haven't spelled that out very clearly. What do you mean by the whole agency shop being unconstitutional given that, you know, the president, you know, allowed setting up agency shop? So how is it unconstitutional? You suggest that even under Abood, it might have been unconstitutional. But I haven't seen you assert that. I haven't seen you spell out anywhere what your theory is on which there's causation by some illegal action under that line of cases. So, Judge Bevis, if I could, may I address causation first and then answer your questions about the merits. The causation prong, we just need to allege at this stage of litigation that the injuries are fairly traceable to the union's behavior. Some of the case law says to the challenged conduct. So help us to understand not just the actor, but the conduct that you are challenging. So the conduct that we're challenging, Judge Bevis, is the union's compulsory collection of money from employees prior to Janice, also after Janice. But in count one, we're talking only about pre-Janice payments that Ms. LaSpina and other employees were forced to make against their will. And we say unconstitutional agency shop in the opinion because the holding of Janice, in our view, is retroactive. The Supreme Court has said repeatedly that its pronouncements of substantive constitutional law always have retroactive effect. Now, again, this doesn't mean necessarily that the union ultimately will be held liable. The unions have asserted in these cases that they are entitled to a good faith defense under Section 1983. And this court recently, indictment against Pennsylvania State Education Association, a case that came out about a month ago, endorsed the idea of a good faith defense for unions, although the court split on the reasoning. So it's quite possible Ms. LaSpina will lose on the merits of this claim, given this court's recently decided precedent indictment. But our claim today is simply that Ms. LaSpina is entitled to a ruling on the merits one way or the other because she has alleged, number one, injury in fact. She was forced to pay money to the union against her will. Maybe that was constitutionally justified at the time. Maybe the union is entitled to a good faith defense, but she certainly has been injured by the fact that she was forced to remit that money. And then the second prong, as you note in your question, is traceability. Can this alleged injury be traceable to the union? And it surely is traceable to the union because the union negotiated the agency shop arrangements with Ms. LaSpina's employer. And the union enforced those arrangements by collecting agency fees from employees who didn't join the union and enforcing a regime in which every employee had to pay the union, whether they joined the union or not. Again, we're not saying at this point that Ms. LaSpina is entitled to prevail ultimately on the merits. It's simply that she's entitled to a ruling on the merits because she has alleged Article III standing with respect to those past injuries. If I could just follow up. So you just articulated the difference between count one and count three as being pre-genesis versus post-genesis. And there are places in your briefing where you suggested one of the remedies you wanted was advising people of rights, opting out. But that properly understood is a count three remedy you're seeking. Count one is the one for monetary retrospective relief, correct? Yeah, that is right. Count one is monetary relief for pre-genesis collections of either agency fees from nonmembers or the compulsory portion of union dues from those who joined. And again, it's quite possible that claim is foreclosed on the merits by diamond. But today we're only arguing whether Ms. LaSpina has Article III standing to even assert this claim. So we're not in any way suggesting today that she ultimately should prevail. But it's only our claim that the district court should have issued a ruling on the merits rather than throwing this out for a lack of an Article III case or controversy. Does the retrospective prospective apply to count two? Is your federal portion of count two prospective only relief declaratory injunction? And is the retrospective part of count two really just a state law claim for conversion and trespass? No, it's not a state law claim. We believe this was a violation of Section 1983 for the union to continue taking money after she had resigned her membership. So count two, Judge Bevis, has both retrospective and prospective components. Ms. LaSpina is seeking retrospective relief for the money that was taken from her wages after she resigned. So she resigns after Janus in August of 2018, but money is continued to be diverting from her wages through October until after she sues. She was also seeking an injunction against the union to stop the union from tapping her paycheck. Now, there are all sorts of interesting questions here about mootness, because does the union moot the case by trying to unilaterally tender a portion of the relief that she was seeking? Before we get into mootness, just to follow up on Judge Bevis's question, in terms of the retrospective relief, what they were continuing to deduct was her full membership fees. Is that right? That is correct, yes. So if it's the full membership fees that were being taken out, not simply fair share fees, then where is the First Amendment violation? Because at that point, she had resigned her membership. So August 20, 2018, after Janus, she mails her resignation letter to the union. Once she resigns, the union shouldn't be taking anything from her paycheck. Everyone's agreed on that, but the amount that was taken, which was conceded in error, why isn't that just a state tort? And why should we be constitutionalizing a state court for the failure to turn off their automatic deductions a month or two earlier than they should have? Because Janus specifically holds, at the end of the opinion, that once an employee has resigned from the union, the union is constitutionally forbidden to divert money from their paycheck unless they clearly and affirmatively consent before any money is taken. And Ms. Laspina did not give her clear and affirmative consent after she became a non-union member on August 20, 2018. That's why it's a constitutional violation. The Supreme Court specifically says in Janus that if you tap the paycheck of a non-union member absent clear and affirmative consent, it's a violation of the First Amendment, in addition to perhaps being a state law tort. But that's why this is a Section 1983 claim, and that's why we're litigating it under Section 1983 in addition to state tort law. It seems in some respects like you want her to, for some purposes, to remain a member and for other purposes to not be treated as a member of the union. I'm sorry. Do you need to commit to one or the other of these? She definitely wants out, and she resigned on August 20. She wants nothing further to do with the union. She's not seeking to retain her membership in any way, shape, or form. She is seeking a remedy for compulsory union payments that she was forced to make prior to Janus, and she's seeking a remedy for money that was taken from her wages after she resigned her union membership on August 20, 2018. Your Honor, I just respectfully disagree. I don't see how in any way we're suggesting that Ms. Laspina wants to remain a member of the union in any respect. Well, if you agree that she was not, she was no longer a member and has no interest in being a member, that's clearly going to raise some issues around standing for count three. Well, with count three, count three is simply a request that employees be informed of their constitutional rights, whether they're members or not. They have, at least in the plaintiff's field, the right to know what their rights are before their wages are diverted to the union. And Janus talks about this at the end of the opinion with clear and affirmative consent. It's not totally clear what Janus means by clear and affirmative consent. But Ms. Laspina, prior to Janus, was led to believe by her employer, this is not the union's fault, but the employer falsely told her that union membership was compulsory by law. And there still are many public employees who aren't aware of their constitutional rights, even in the wake of Janus. And Ms. Laspina is requesting an injunction that they be informed of their rights before money is taken. Again, she may lose on the merits, but the district court should not have thrown this out for lack of an article three case or controversy. She surely has alleged injury, in fact. How is that injury to perspective injury to herself? How is the risk of her suffering either of those injuries as she's neither a current or intended future member of the union? Because on the day she sued, the union was still diverting wages. Well, then you are saying she was still a member by virtue of the continued deduction of her wages. She was a non-member, but union dues were being inappropriately deducted from her wages despite the resignation on August 20th of 2018. Now, after she sued, the union stopped capping her paycheck. And that raises the question whether the voluntary cessation of challenged conduct can moot the case in the wake of Ms. Laspina's lawsuit. And I see my rebuttal time is have I do I need to stop to save my rebuttal time? We will let you know when we're ready to stop, but we'll give you some additional time as we will your colleague on the other side of the aisle. So because I did pull you off to to address the issues around count three, but let's let's step back. And why don't you address the mootness issues that you wanted to with regards to count count to the individual count? Yeah. Thank you, Your Honor. With respect to mootness on count to district courts, holdings on this issue are not compatible with Campbell Evolv against Gomez Supreme Court ruling from about four years ago and for several reasons. Number one, Ms. Laspina has not received an offer of complete relief on her claims because she has not received either the attorney's fees or the class one relief that she has requested. The union has attempted to refund only a portion of what Ms. Laspina has demanded in her complaint, but that cannot moot a claim for relief under Campbell Evolv. One of the really interesting wrinkles in this case is whether the union can moot Ms. Laspina's claim by forcing money back into her bank account through the direct deposit mechanism. So the union mailed Ms. Laspina a check for $11.81. But with respect to the remaining $55 that the union alleges was refunded to Ms. Laspina through direct deposit by her employer in a future paycheck. Campbell Evolv has this caveat in the opinion that says the mootness analysis might be different if money is actually put into the plaintiff's bank account. And then the district court enters judgment in response to that deposit. The Campbell Evolv caveat that I just described is not applicable to this situation for several reasons. Number one, the union hasn't deposited the full amount of money into Ms. Laspina's bank account. They deposited a portion of that, the $55 portion, but they mailed her a check for the remaining $11 that she has refused to cash. Number two, the union hasn't included attorney's fees. So they haven't given her complete relief relative to what she's asked for in her complaint. Mr. Mitchell, as you well know, there's another important distinction, which is Campbell Evolv was already a class action. This had not been certified as a class action. And you need to have standing and non-mootness as of the time it's going to become a class action. So why is Campbell Evolv even, why does it even govern here? Your Honor, with respect, I don't believe that's right. Campbell Evolv, they tried to buy off the lead plaintiff before class certification. It's possible there was a motion for class certification pending at the time, but I don't even think that was the case in Campbell Evolv. There certainly was not class certification already issued in Campbell Evolv. You know, the very question the court had to resolve was whether this so-called pickoff maneuver in Campbell Evolv would be allowed. Mr. Mitchell, let me ask you, you talk about the employer, the employer, the library was the employer, correct? Yes, that's correct. So the union, assuming what you're telling us is true, the union never misled her. It was the employer that misled her. Is that correct? Yes, that's right. We've never accused the union of affirmatively misleading Ms. LaSpina into joining up for union membership. It's all about the employer. It's all about the employer misleading her and her colleagues. With respect to that portion of the claim. So, Judge Restrepo, the misleading only caused Ms. LaSpina to pay full union dues rather than a reduced amount in agency fees. We're not seeking to recover that portion from the union. We've acknowledged throughout this litigation the union is not liable to return the difference between full union dues and the agency fees that Ms. LaSpina paid, not because of anything the union did, but because her employer misled her into thinking that union membership was compulsory by law. She still, however, was— Claims against the library and Monell claims, right? The practice and pattern type claim? They—I don't believe we can establish a Monell claim on the fact that she was misled. That was a one-off action by Ms. Bunce who emailed Ms. LaSpina and told her union dues are compulsory by law. I don't think we can establish a Monell claim on that, and we haven't asserted that in our complaint. Could I ask about amendment? If we do find any or all of these claims are not properly pled or there's not standing, the district court—this was the second amended complaint you've amended before, but the district court didn't give you leave to amend. Would you amend to plead anything different or more specific about causation, for example, or traceability if that were an issue? Well, we would. I think if you were to affirm the district court's holding on traceability, then we believe we should have the opportunity to plead more specific facts to show traceability. But again, Your Honor, with respect, we believe we've already done that in the second amended complaint. She specifically says that she would never have joined the union, and she never would have paid the union absent the agency shock. And that allegation has to be accepted as true at this stage of litigation. So if that's not enough to allege traceability, I suppose we can go back again and plead with even more emphasis and even more detail that we really mean to plead traceability here. And we would respectfully ask for the opportunity to do that. But it's hard for me to see how we haven't pleaded the issue. Again, maybe we won't be able to prove that when we get to evidence. Maybe the union's entitled to a good faith defense on the merits under Section 1983. But it seems— You did not say anything to the district court about wanting to amend or proffer anything that you would have amended. We didn't, and partly that's because we're already on the second amended complaint. So we've had the opportunity to amend before. But I think more importantly, Judge Bevis, we just don't see how we could have added more detail that would have changed the district court's mind at this stage of the litigation based on what he said. We don't think the district court was throwing us out for insufficient factual detail in the complaint. This wasn't a Twombly or Iqbal dismissal where we didn't have enough specificity. The district court, I think, understood what we were pleading and just said, as a matter of law, what we talked about in the complaint doesn't show traceability. And we took the appeal right away because that is, in our view, legal error. It wasn't as though he was throwing us out because he thought he would have ruled a different way if we had simply pleaded the case differently. You mentioned, by the way, earlier that you thought at the end of Janus there was a holding regarding what happens after you resign. I'm looking at the end of Janus. I don't see a reference specifically to the end. It just refers to can't deduct from nonmembers. But I'm not sure what there is in there that you think holds when someone becomes a nonmember at the termination of employment. I think that's right, Judge Bevis. Janus doesn't specifically address that point. But we think it's patently obvious that when someone resigns from the union, they're no longer a member. If someone submits a letter to the union and says, I'm resigning my membership, they're not a member anymore. Whether that's what takes one minute or a couple of weeks or months to process, I'm not sure Janus resolves that. Maybe not. But I don't think the union's contending in this case that Ms. Laspina remained a member after she submitted her letter on August 20th. I think the union is acknowledging that it took some time to process that resignation. They've acknowledged themselves, I think, by tendering the refund that she is entitled to the money back after August 20th. So I don't see any disagreement between the parties over that specific issue, even though I think Your Honor is correct. We can't point to language in Janus that resolves when a resignation becomes effective. But we believe the resignation is effective when the union receives the communication from the member who wants out. And the union, again, they have not disputed that contention at any point in this litigation. Counselors, are you arguing to us that Janus itself makes some portion of a member's dues unconstitutional? No, we're not suggesting that at all. If you're a member of the union post-Janus, if you're a member and you've joined voluntarily, there's nothing unconstitutional about that. What we're suggesting is that Ms. Laspina prior to Janus was forced to pay money to the union against her wishes because her only choices were either to join and pay money or stay out of the union and pay money. Either way, she had to pay money. And that's what she's seeking a refund for. It's not unconstitutional to have a union member join and pay dues. What's unconstitutional is to force an employee who doesn't want to pay the union to pay the union. They have to have a choice. That's what Janus holds. And if they stay out of the union after Janus, their paycheck can't be taxed. But if they join the union post-Janus, nothing wrong with the union collecting money. But if someone joins voluntarily, how can someone have a Janus claim? I mean, I think what you're saying is this is a simple but-for inquiry, that if the person had refused, he would have had to pay anyway. Therefore, it's a but-for cause. But if the person chose voluntarily to do it, then how is it the union's responsibility? Because in a different hypothetical state of affairs, it would have compelled under the law. But this person actually chose to do it. That seems to be at the heart of your argument. It's counterintuitive. We entirely agree. If a person voluntarily joins the union, there's no constitutional problem at all. Ms. LaSpina did not voluntarily join because she was affirmatively misled by her employer into believing that union membership was mandatory. Now, again, that's not on the union. The employer did that. But it defeats any claim that Ms. LaSpina freely and voluntarily consented to union membership. And more importantly, Ms. LaSpina's payments to the union were compulsory, even though her membership could have been voluntary. She had to pay regardless. If there's evidence to show that a person would have joined the union happily in a non-agency shop, right-to-work environment, they have no damages from anybody because the agency shop didn't cause them to pay money to the union. They would have joined and paid the union regardless. Ms. LaSpina has alleged, however, that she would not have paid the union or joined the union in the absence of the agency shop. And that's all we need to show traceability under Article III. It's not necessary for this court to resolve at this stage whether Ms. LaSpina is entitled to relief. She's just entitled to a ruling on whether she's entitled to relief. And she's surely alleged enough to show the traceability component of Article III injury because the agency shop is, what she alleges, what caused her to pay the money and join the union. Okay. Your theory is the whole agency shop is unconstitutional. And there's a place in the complaint that says even under Abood you think it was unconstitutional. At least the union has an obligation to show certain things to make it constitutional. Can you explain what you mean by that? If we just set aside what Janice says and imagine that under a good faith defense or something that the Abood law controls, how could it be unconstitutional under Abood? What the union – what we're claiming in our complaint and what we would claim if we get to the merits of this case is that if the union wants to assert a good faith defense under Section 93, it needs to show that it complied with the existing Supreme Court precedent at that time, which was Abood. So if the union tries to say we shouldn't have to pay out money for any pre-Janice membership dues or agency fees we collected, they need to show that the agency shop was being operated in compliance with the relevant Supreme Court guidance at the time. And Abood held that you could have an agency shop, but the union had to ensure that no agency fees were ever diverted or used for political purposes. They could only be used for purposes that were germane to collective bargaining. So the union may very well be able to make that showing, but we believe they would need to make that showing to establish a good faith defense under Section 1983. Again, this is getting way ahead of the issues presented on this appeal, which deal with Article 3 standing. I'm talking a lot about the merits of this case, but this would all be issues to resolve if and only if this court concludes that Ms. Laspina has sufficiently alleged an Article 3 case or controversy. Judge Kress, you're muted. Thank you. Why don't we come back to you on rebuttal? And let's move this over to Ms. Hoy. Thank you, Your Honors. Hey, at Please the Court, I'm Scott Cronlund for the defendants. Apologies. I have other information down. Go right ahead. Thank you, Your Honor. The district court was right to dismiss the three specific and somewhat idiosyncratic Section 1983 claims that are at issue here. The plaintiff's first claim challenged the pre-Janus requirement that nonmembers pay agency fees. But the plaintiff herself didn't suffer an injury that was fairly traceable to the agency fee requirement. She didn't pay agency fees. She didn't know agency fees existed. If agency fees had been zero, it wouldn't have mattered to the plaintiff. Therefore, her injury was not fairly traceable to the agency fee requirement. The argument that's been made here concerns a different injury, which the plaintiff was not asserting in Count 1. In her opposition to the union's motion to dismiss ECF 79, the plaintiff was absolutely clear that Count 1 was brought on account of the agency fee requirement. It was entitled unconstitutional agency shock. She made clear that she was not seeking to hold the union liable because of the misrepresentation that caused her allegedly to be a union member. She's also said in her reply brief here in an oral argument that she doesn't have the facts to hold the library responsible on a Monell theory for the alleged misrepresentation. So she was absolutely clear before the district court that Count 1 was about agency fees, and she didn't have an injury that was fairly traceable to agency fees because agency fees were not the but-for cause of her injury. If I wanted to challenge the level of fees that my state bar charges for inactive members, but it turns out that I was an active member and I didn't even know there was such a thing as inactive status, I wouldn't have standing to challenge that. Just because she had an injury in fact caused by something else doesn't give her standing to bring suit to challenge agency fees, which is what she made absolutely clear she was challenging. It appears, counsel, if I'm understanding the argument correctly, that there may be some different mechanisms that led to the injury here, but that one way or the other, whether it was the incentive to join the union, it was the decision to be non-member but then be paying the fair share fees, or with or without knowledge of the difference, calculating that it would make more sense to at least have the benefits that went along with membership, that all of those come back at their root to the unconstitutional fair share fee in the picture. Why isn't that characterization enough to have injury here that's fairly traceable to the problematic conduct where she could represent that overarching class? Well, the Second Amendment complaint refers to three groups of people. People who did pay agency fees, they certainly suffered an injury traceable to the agency fees. That wasn't the plaintiff. People who allegedly joined the union because they knew about the agency fee requirement, and in light of the fact that there were agency fees, they thought, well, may as well become union members. Perhaps they have an injury fairly traceable to the agency fee requirement. But then there's the third group, which consists of Ms. Lespina, who became union members because someone told them union membership was mandatory. That has nothing to do with the agency fee requirement, which is a requirement imposed on non-members. If there were no agency fees, she would have suffered exactly the same injury. There isn't a but-for causal connection between agency fees and her being the union member on the allegations of the complaint. And just because you suffer one injury doesn't give you standing to sue for others. Judge Bibas, you're muted. Sorry, Mr. Conlon. I take Mr. Mitchell to be arguing that the whole setting up of an agency shop was unconstitutional if we assume that Janice applies retroactively. Maybe if it's not spelled out now, maybe they could amend their complaint to show how that caused the library employee to misinform her. And through some causal chain, therefore, she wound up paying fees that she wouldn't have otherwise. Why isn't that enough or at least enough that we should give her a chance to amend? Well, the complaint does not allege that the fact that there were agency fees for non-members caused a library employee to think that membership was mandatory. It was not alleged, not argued to the district court below. District court was told, we're not blaming the union for the misrepresentation. No request to amend. So that's contrary to the facts that were alleged in the complaint and contrary to what the district judge was told. But this is a civil rights lawsuit. We give leave to amend liberally. You don't even always need to request it specifically. If we find these allegations insufficient and accept that portion of your argument, isn't the proper course to say the district court, if we think it may be misunderstood some of the details of the standing or mootness analysis, should go back, give the leave to amend, and then work through the specifics under the correct legal standard? Well, again, Your Honor, it's not that the district court didn't understand things. The plaintiff chose what claim to bring in the complaint, brought it based on the unconstitutional agency shop, told the district court that she was not holding the union responsible for the misrepresentations, did not allege that somehow the fact that there is an agency shop, which has to do with what nonmembers pay, somehow caused someone to think that membership was mandatory. And if that had been the allegation, then there would have been no proximate cause, which is required for a 1983 claim. So the court would be giving the plaintiff leave to amend to state a claim that doesn't comport with the facts in the complaint, isn't a claim that the plaintiff sought to plead, isn't a claim that the plaintiff asked for leave to plead, and would be meritless. And under those circumstances, especially where that isn't even an argument made on appeal, that amendment should have been granted, we do think it would be inappropriate to require the union to keep spending the members' money to litigate this case. If I could move to claim two. Claim two was just an individual claim, expressly pled as such in the complaint, and it alleged that the defendants had failed to process the plaintiff's request to stop deductions after her resignation. But that claim had become moot by the time the second amended complaint was filed. And in her opposition to the motion to dismiss, ECF 79, the plaintiff didn't identify any merits relief that would benefit her that she didn't already have. Going forward, the district court found that the deductions had stopped, and there was no likelihood that the plaintiff herself was going to have money deducted again. And going backward, the district court found that the plaintiff had received a full refund. Sorry, wasn't that the same argument in Campbell Ewald? How is this distinguishable where Campbell Ewald suggested that the defendant can't necessarily buy off a plaintiff who was seeking to represent a class? First, count two was just an individual claim. The plaintiff expressly said so, that count two was an individual claim. And therefore, there was no buying off to avoid a class action. Second, it's the opposite of what occurred in Campbell Ewald, where an offer was made that was declined, leaving the plaintiff empty-handed. In Campbell Ewald in footnote five, the Supreme Court distinguished the situation in which the plaintiff actually had received full relief. Here, the plaintiff was not empty-handed. She had full hands. She had all of the money in her hands at the time. She didn't argue to the district court that it wasn't enough money. She didn't argue that she wanted some type of emotional distress damages for the delay in payment. She didn't seek punitive damages. She didn't seek any merits relief that she didn't already have. She alleged three things. I mean, she argued three things. One, she wanted relief for other people, but she didn't have standing to seek relief for other people because it wasn't a class claim. She said she wanted attorney fees and costs, but those are ancillary to the merits. They don't keep a claim alive. That's moot. And third, she said, I didn't cash the check, or what she said is I'm refusing to cash the check. But she had the check in her hand, whether she cashed it or she framed it and put it on her wall. It was a negotiable instrument. It was in her hand. She didn't need relief from the defendants to make herself cash the check. Counsel, how is an uncashed check really any different than receiving an offer of settlement? I mean, if she opens her mail and instead of it being a letter saying we're prepared to pay you $11, it's a check for that amount. Why would there be a legal difference in terms of one type of document versus the other where she, in fact, has not deposited it? Well, an offer requires some reciprocal commitment. This was simply the processing of her resignation and request to stop deduction. She asked to stop deductions. The deductions stopped. There was a bit of lag, as there sometimes is, between when payroll caught up and she received a complete refund. It wasn't an offer. She didn't have to agree that it was complete relief. It didn't say paid in full on it. It wasn't conditional on anything. It was just payment, and she had it. And the established rule is that while you can object to a check and say I want cash instead, if you don't do that, the check is treated as the equivalent of cash. And she had it in her hand. So it wasn't a mere offer. It was actual payment, and it wasn't done to pick off a class action. This wasn't a class action claim. And the evidence shows the union processed her drop request before even being served with the lawsuit. Didn't even know about the lawsuit. So it's not the Campbell Ewald situation. And if the district court had not dismissed the claim as moot, there would have been nothing to litigate about. She already had all of the merits-based relief. There was no dispute about whether she was entitled to the refund of approximately $67. She had it in her hand. It had been sent to her. The plaintiff in Campbell Ewald was made an offer that the plaintiff rejected, and therefore, as the Supreme Court said, that plaintiff was empty-handed and could continue to sue for the relief. Here, there was no offer. But at the heart of this, and indeed the other counts, seems to be the view that the fair share fees is a component of membership dues. And it's that component that she's seeking back, and that component deemed as equivalent to that of non-members and unconstitutional. What's wrong with thinking about it that way? Well, fair share fees were not a component of dues. Members joined the union. They voluntarily paid dues. There was a fair share fee that was chargeable to people who chose not to join the union. They were two separate things. It wasn't like everyone paid fair share fees, and then for a little more money, you could be a union member. It was the opposite. Union members paid dues, and the law at the time permitted charging non-members, which she was not, for fair share fees for their costs of collective bargaining representation. So she joined the union. She paid dues. She had membership rights and benefits in return. She resigned her membership. The dues deduction stopped, and she got a refund. And at least as to Count 2, which was just an individual claim, there was nothing more to be done with respect to Count 2. Claim 3, which was the prospect of relief claim, sought injunctive relief to require that members be asked for new consents for membership dues deductions post-Janus that informed them of their Janus rights. But that wasn't relief that would redress any injury to the plaintiff. Before she filed the lawsuit, she knew her Janus rights. She'd already resigned from the union, sent a letter requesting that her deductions be terminated. Her letter discussed Janus fias me and said, under Janus, I have a right to pay nothing to the union. So the relief that was being requested on Count 3, which was purely prospective, wasn't relief that plaintiff had standing herself to seek because she knew her Janus rights. She'd already resigned and withdrawn consent. Getting new consents wouldn't benefit her. As we consider various possible exceptions to mootness, just to confirm, there has been no motion for class certification filed here. Is that right? That is correct. There's been no motion for class certification. And there are doctrines about when, even though an individual claim is moot, you can still pursue a motion for class certification. But that wasn't the plaintiff's argument below. Her argument was that she herself still had a live claim. Not that her claim had become moot, but she could still move her class certification, which is a very different argument. And I would urge the court to look at ECF 79, which was the plaintiff's opposition in the district court to the motion to dismiss, where the plaintiff very clearly described exactly what she was arguing and exactly what she was seeking. Because this is a somewhat idiosyncratic case in that the plaintiff did suffer an injury. In fact, according to the allegations, it's just not the one that was the basis of the 1983 claim that she sought to bring. And likewise, with regard to the refund claim that had become moot, it was the fact that the plaintiff didn't identify any merits-based relief that she was seeking that made her claim moot. Again, if she had been seeking punitive damages, if she had disputed that the $67 was enough, then the claim would likely not have been moot. But she didn't raise any of those arguments or dispute that. So there was just nothing to litigate that was left in the district court. And if the district court hadn't dismissed the claims as moot, there would have just been no basis for litigating a 1983 claim, because there was just nothing more to dispute. So unless... And the presence of that in the background would motivate someone like Ms. Lasvina to join the union. Why isn't that enough for her to represent the class? Because she didn't know about the agency fee requirement on the allegations of the complaint. Therefore, it couldn't have motivated her to do anything. Her complaint is very clear that if she had known about the agency fee requirement, she would have chosen to be an agency fee payer. So it's impossible that there was a causal connection between the agency fee requirement and her own decision to join the union, because she didn't know about it. But how can we say it's impossible? I mean, you know, especially if they amended, there could be some way in which the agency fee requirement induced the librarian to misunderstand and mislead her. I don't see how we could say impossible, which is a factual point at this pleading stage. Well, now Your Honor is suggesting a different chain of causation, not that Ms. Lasvina knew about the agency fee requirement, which she didn't, but that because there was an agency fee requirement for non-members, a library employee thought membership was mandatory. But even if that had been alleged, and it wasn't, it wouldn't have been a 1983 claim because you need proximate cause for 1983. The agency fees wouldn't have been the proximate cause of a library employee's complete misunderstanding of what agency fees are, even if it was the but-for cause of the agency fees. And it would also need to be based on some allegation in the complaint that there is just no allegation that the library employee even knew about the agency fee requirement. If the library employee did, then the library employee would have known that there was a category of non-members who paid agency fees, not union dues, and wouldn't have thought that union membership is mandatory. So it's completely inconsistent with what's actually alleged in the complaint. And again, Ms. Lasvina didn't ask for leave to amend to allege any such facts about what may have motivated a library employee based on a complete misunderstanding of the actual policy at the time. Unless there are questions, Your Honors, I see I've exceeded my time. Okay, thank you very much. And we'll proceed with rebuttal. Thank you, Your Honors. On the question of traceability, the key allegations appear on pages 88 and 89 of the appendix, where in the plaintiff's second amended complaint, she specifically alleges that she would, quote, never have joined the union had she known that she had a right to remain in the union. She has specifically alleged that she would not have joined the union or paid the union anything if the agency shop arrangements had not existed. Ms. Lasvina alleges in the complaint that she would not have joined and she would not have paid. Those allegations must be accepted as true at this stage of the litigation. We're not seeking to hold the union liable for the fact that Ms. Lasvina joined the union. We've made that clear throughout this litigation. We made this clear throughout our oral argument today. We're not seeking to recover money from the union over Ms. Lasvina's decision to join because she was misled by the library employee who incorrectly told her that union membership was mandatory. Counselor, I guess that's where I'm struggling a bit and maybe you can help. It seems like you agree you're not asking for the full union dues back. And that's not the nature of the claim. But to the extent that it is this false representation that led her or a mission that led her to join the union and the injury is having done that and therefore losing out on the full amount of dues. Whatever other claim you might bring on that basis as to the class claims, it sounds like she's seeking to represent a class on the ground that she did not suffer an injury that she would have suffered had she not paid union dues. How is their standing in that? Because the injury, Your Honor, is the compulsory payment that she was forced to make, not the fact that she joined. She's not seeking to recover the full amount of union dues. But it's the compulsory payment of the union dues, if I'm understanding you correctly. It's the compulsory payment of the portion of the union dues that she would have had to pay, regardless of whether she joined the union or not. So, Ms. LaSpina was confronted with two choices. Join the union and pay full membership dues or stay out of the union and pay fair share fees. No matter which choice she made, she would have had to pay at the very least the amount of money equal to the fair share fees that every employee would have had to pay. You agreed earlier that you weren't separating out the fair share fee component of membership dues and suggesting that membership dues or some portion of them was unconstitutional under Janus. So, how can we see the fair share fee portion that would have been paid by non-members as supporting standing for someone who paid membership dues, where you're not seeking to separate out any fair share component of those membership dues? The injury in that latter category seems to be the joining of the union and paying with the full membership dues. The injury is that she was forced to pay money to the union, whether she joined or not. That's the injury we're alleging on count one. The fact that she chose to join, we're not seeking any damages from the union over her decision to join. We're seeking damages over the fact that the union forced her to pay money regardless. And we're seeking to recover only the compulsory portion that she would have been forced to pay. The issues with Ms. Bunce and the misleading email are irrelevant to the claims for relief that we're seeking against the union. We're not seeking recovery for that incremental difference that she paid on account of the fact that she was misled. We've made clear the union's not liable for that, and we've made clear that we're not seeking recovery from the union for that money. The injury is that the union compelled every employee in Ms. Laspina's bargaining unit to pay money to the union, whether they joined or whether they stayed out. That was a compulsory payment. That is injury in fact under Article III. Again, it's not necessary for this court to decide whether that money needs to be refunded. That goes to the merits. But whether Ms. Laspina has alleged an Article III case or controversy, she has shown injury by the fact that she was forced to pay money to the union. And it's traceable to the union because the union negotiated the agency shop that established this compulsory payment regime. That's the traceable component of the Article III standing inquiry, and it has nothing to do with the misleading emails that Ms. Laspina received from the library employee who told her that she had to join. It seems, and maybe another way of looking at this is, why aren't you then trying to separate out a particular injury and the conduct that gave rise to that injury? I mean, we have to have injury that's fairly traceable to particular conduct. And for one group, that conduct is forcing them to join the union, resulting in membership dues being paid as a whole. In the other, it's forcing them to pay fair share fees. And that's a group of non-members who were forced to make that payment. Why don't we have different conduct that's at issue, or conversely, different injuries that have resulted? Your Honor, nobody was forced to join the union. The employees were forced to pay the union. Everyone had to pay the amount of money equal to agency fees. The members had to pay that amount, the non-members had to pay that amount. But then you are seeking for members to separate out the fair share fee from the rest of the membership dues. Only for those members who would not have joined the union in a right-to-work environment. The vast majority of employees who were union members would have happily joined the union even in a right-to-work environment. And we've seen this in the wake of Janice. Most employees are staying in their union, even when they have the choice to stay out. We're seeking that recovery only for those like Ms. LaSpina who joined the union prior to Janice, but would not have joined the union if she had been working in a right-to-work environment rather than an agency shop. And again, there may be some differences between these classes of people that precludes class certification. There may be differences that require certification of discrete subclasses within this group, rather than having this being certified as a one overarching class. But for purposes of this appeal, the question is only whether Ms. LaSpina has alleged injury in fact, that is fairly traceable to the union's behavior and that will be redressed by the relief that she's requested. She's clearly satisfied those three components at the pleading stage because she's alleged. Yes, I'm sorry. Yes, I understand your position. I understand your adversary's position. If we decide that the current theory of causation or traceability is not enough, do you want to be able to amend to suggest traceability via the union shop leading to her feeling forced to join the union? Is that something you can allege, can prove, wish to prove? Or is this all riding on the idea that whether she chose or not, no matter what the library employee said, she would have had to pay regardless? Yeah, it would be the latter, Judge Bevis. We would not in any way intend to allege that she was forced to join the union. That's not our claim. And you don't want to amend to say that or anything like that. This is all going to ride on whether she was forced to pay fees because of the fallback that she couldn't have opted out. She was forced to pay no matter what she did. That's our complaint. That's our claim. We are not suggesting she was forced to join the union. She obviously wasn't forced to join. She had a choice. She was misled by the library employee. But again, that's not on the union. What we would amend if we were given the opportunity to amend is we would just provide it in more detail that Ms. LaSpina had to pay money to the union no matter what she did. That injury, and I don't believe the union's contesting injury in fact. As I understand their brief, they're contesting only the issue of traceability. And the district court, as I understand its opinion, was contesting only the question of traceability. The injury came from the forced payments, not membership, but the forced payments. And it's traceable, clearly traceable to the union because the union was the entity that negotiated the existence of this agency shop along with Ms. LaSpina's employer. And again, that's all we need to show an Article III case or controversy because Ms. LaSpina is seeking to recover the money that she was forced to pay to the union against her will. Not the portion that she paid voluntarily by joining the union, but the portion that she paid against her will that every employee had to pay, whether they joined the union or not. And if the court has no further questions, I see I've exceeded my rebuttal time already, we would respectfully ask the court to reverse and remand for further proceedings. We thank both counsel for an excellent argument today, and we will take the case under advisement.